**GREENPEACE U.S.A., INC., Plaintiff,**

v.

**ENVIRONMENTAL PROTECTION AGENCY, Defendant.**

**Civ. A. No. 89–1036.**

United States District Court, District of Columbia.

April 30, 1990.

Katherine A. Meyer, Eleanor H. Smith, and Alan B. Morrison Public Citizen Litigation Group, Washington, D.C., for plaintiff.

Carol S. Hebert, Dept. of Justice, Washington, D.C., for defendant.

MEMORANDUM

JOHN GARRETT PENN, District Judge.

Plaintiff, a non-profit environmental advocacy group, filed this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Plaintiff seeks disclosure of records relating to the participation of J. Paul des Rosiers, an employee of the Environment Protection Agency ("E.P.A."), in a public meeting held in Haysville, Kansas by Vulcan Chemicals Company ("Vulcan Chemicals").[1] Specifically, plaintiff requests production of any records which indicate whether Mr. des Rosiers' participation was approved by the E.P.A. and whether, and how much, he was reimbursed by Vulcan Chemicals for his appearance. Plaintiff also seeks production of documents reflecting whether Mr. des Rosiers' action is considered by the E.P.A. to be in violation of the agency's conflict of interest regulations.

Defendant has refused to confirm or deny whether any responsive records exist. The defendant argues that to do so would constitute a clearly unwarranted invasion of Mr. des Rosiers' privacy. The defendant claims exemption from disclosure under 5 U.S.C. § 552(b)(6) and (b)(7)(C). This matter is before the Court on cross-motions for summary judgment. The Court heard oral argument on October 12, 1989.

I.

On March 3, 1988, J. Paul E. des Rosiers spoke at a public meeting in Haysville, Kansas that was sponsored by Vulcan

---

1. Plaintiff contends that the purpose of the meeting was for Vulcan Chemical to generate community support for its proposal to operate an incinerator for pentachlorophenol.

Chemical. Mr. des Rosiers was then, and is currently, employed by the E.P.A. as an engineer in the Research and Development division. The March 3 meeting concerned a proposal by Vulcan Chemicals to build a hazardous waste incinerator for the incineration of wastes from the production of pentachlorophenol, referred to as "penta." Vulcan Chemicals is regulated by the E.P.A. program office which Mr. des Rosiers serves; therefore, his engagement to speak at the Vulcan Chemicals meeting required prior agency approval.

Defendant contends Mr. des Rosiers spoke at the March 3 meeting as an individual and not as a representative of E.P.A. Defendant's Statement Of Material Facts As To Which There Is No Genuine Issue ("Defendant's SOMF") par. 5. Plaintiff disputes defendant's contention that Mr. des Rosiers did not speak as a representative of E.P.A. Plaintiff's Response to Defendant's SOMF par. 2. Plaintiff notes that the agenda identifies Mr. des Rosiers as an official of the E.P.A. *Id.*, Plaintiff's Exhibit I. Further, plaintiff states that Mr. des Rosiers was introduced by the Vulcan Chemicals representative as an official from E.P.A. Plaintiff's Response to Defendant's SOMF at 2., Plaintiff's Exhibit A par. 6.

## II.

■ The FOIA disclosure requirements does not apply to:

> personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy.

5 U.S.C. § 552(b)(6). Both parties acknowledge that the Supreme Court has rejected an interpretation of Exemption 6, that would apply only to information that is "highly personal or as intimate in nature." *United States Department of State v. Washington Post Co.*, 456 U.S. 595, 102

S.Ct. 1957, 72 L.Ed.2d 358 (1982). The Supreme Court stated that "the exemption was intended to cover detailed Government records on an individual which can be identified as applying to that individual." *Id.* at 602, 102 S.Ct. at 1961 (citation omitted).

Defendant contends that the plaintiff's request seeks access to any records pertaining to a named federal employee's outside employment. Defendant's Memorandum In Support of Its Cross–Motion for Summary Judgment and In Opposition to Plaintiff's *Motion for Summary Judgment* ("Defendant's Memorandum") at 7. The defendant further states that "[a]ny responsive records, therefore, would necessarily consist of personal information identifiable as applying to that individual and concerning his private employment and activity outside the scope of his official duties." *Id.* However, the Court does not agree with defendant's description of the information sought.

Although there is a dispute as to whether Mr. des Rosier spoke as an individual or on behalf of the E.P.A., it is clear that he was introduced at the March 3 meeting as an employee of the E.P.A. The Vulcan Public Meeting Agenda indicates that Mr. des Rosier is a "Research and Development Engineer for the Environmental Protection Agency, Washington, D.C. *Incineration.*" Plaintiff's Exhibit I. The information sought does not go to personal information about Mr. des Rosier, but to whether his attendance at the March 3 meeting was in violation of the E.P.A. regulations.[2] Even in view of the broad interpretation enunciated by the Supreme Court, the information sought in this case is not exempt under exemption 6.[3]

## III.

■ Exemption 7(C) states that FOIA disclosure does not apply to

---

**2.** As noted earlier, plaintiff seeks information as to whether Mr. des Rosiers' participation was approved by the E.P.A. and whether, and how much, he was reimbursed by Vulcan Chemicals for his appearance; as well as, whether Mr. des Rosiers' action violated the agency's conflict of interest regulations.

**3.** In the *United States Department of State v. Washington Post,* the information sought was whether certain Iranian nationals held valid United States passports. 456 U.S. 595, 102 S.Ct. 1957, 72 L.Ed.2d 358 (1982)

records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... could reasonably be expected to constitute an unwarranted invasion of personal privacy.

5 U.S.C. § 552(b)(7)(C). In reviewing exemption 7(C), this Court must

distinguish between internal investigations conducted for law enforcement purposes and general agency internal monitoring that might reveal evidence that later could give rise to a law enforcement investigation: an agency's investigation of its own employees is for "law enforcement purposes only if it focuses directly on specifically alleged illegal acts, illegal acts of particular identified officials, acts which could if proved, result in civil or criminal sanctions."

*Stern v. F.B.I.*, 737 F.2d 84, 89 (D.C.Cir. 1984) (citing *Rural Housing Alliance v. United States Department of Agriculture*, 498 F.2d 73, 81 (D.C.Cir.1974)).

This Circuit has held that:

an agency's general internal monitoring of its own employees to insure compliance with the agency's statutory mandate and regulations is not protected from public scrutiny under Exemption 7, although another exemption, such as Exemption 6, may apply.

*Id.*[4] The instant case is distinguishable from *Stern v. F.B.I.*, where the Court concluded that "the investigation went beyond general monitoring of agency activities." 737 F.2d at 89.[5] This case addresses whether an agency employee has complied with agency regulation; accordingly, there is no basis for the defendants argument that the investigation is for "law enforcement purposes." This Court concludes that exemption 7(C) does not apply.

IV.

For the reasons discussed above, the Court concludes that exemption 6 and exemption 7(C) do not apply, and that defendant's failure to disclose the information sought was improper. The Court further concludes that plaintiff's motion for summary judgment should be granted and defendant's cross-motion for summary judgment should be denied.

---

**4.** The Court further stated that "[i]f this broad interpretation is accepted, however, we immediately encounter the problem that most information sought by the Government about its own operations is for the purpose ultimately of determining whether such operations comport with applicable law, and thus is 'for law enforcement purposes'. Any internal ... monitoring conceivably could result in disciplinary action, in dismissal, or indeed in criminal charges against the employees. But if this broad interpretation is correct, then the exemption swallows up the Act ... [and] defeats one central purposes of the Act to provide public access to information concerning the Government's own activities." *Id.*

**5.** The Court noted that "[t]he [Department of Justice] had obtained sufficient information to warrant the initiation of the investigation. After the DOJ uncovered evidence that the FBI had failed to discover and report all incidence of surreptitious entries, the Attorney General directed the FBI to conduct an inquiry to determine the causes of the FBI's failure and to determine in what way FBI employees had contributed to this failure. The activity under investigation constituted potential violations of federal criminal laws prohibiting the obstruction of justice." *Id.* at 89–90.