**Catherine COTTON, Plaintiff,**

**v.**

**Robert MCC. ADAMS, Defendant.**

**Civ. A. No. 91–2827.**

United States District Court, District of Columbia.

June 26, 1992.

Glen H. Carlson and Diane E. Cafferty of Carlson & Cafferty and Theresa A. Amato, Alan B. Morrison, Patti A. Goldman of the Public Citizen Litigation Group, Washington, D.C., for plaintiff.

Jay B. Stephens, U.S. Atty., District of Columbia, John Bates, Asst. U.S. Atty., and Mark E. Nagle, Asst. U.S. Atty., Washington, D.C., for defendant.

### MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

#### INTRODUCTION

Pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, Plaintiff Catherine Cotton seeks "a copy of any and all reports of the Office of Inspector General of the Smithsonian, respecting Andrea G. Snyder, a Senior Buyer at the Smithsonian Institution's Museum Shops, and Kathy Borrus, a Merchandise Manager at the Smithsonian Institution's Museum Shops." Plaintiff's FOIA Request, attached as Exhibit A to Plaintiff's Motion for Summary Judgment. The Defendant Smithsonian Institution has released two of the four documents responsive to the Plaintiff's re-

quest.[1] The parties have filed cross-motions for summary judgment with respect to the agency's decision to withhold the remaining two documents in their entireties under FOIA Exemptions (b)(6) and (b)(7)(C). *See* 5 U.S.C. §§ 552(b)(6), (b)(7)(C). The Defendant also petitions the Court to reconsider its determination that the Smithsonian Institution is an "agency" subject to the FOIA. *See* Order, *Cotton v. Adams*, Civ. 91–2827 (D.D.C., March 18, 1992) and Transcript of March 18, 1992 Motions Hearing.

ANALYSIS

A. THE DEFENDANT'S MOTION FOR RECONSIDERATION OF THE COURT'S MARCH 18, 1992 ORDER SHALL BE DENIED.

█ On March 18, 1992, after hearing oral argument and upon consideration of the pleadings, this Court determined that the Smithsonian Institution is subject to the FOIA. *See* Transcript of March 18, 1992 Motions Hearing; Order, *Cotton v. Adams*, Civ. 91–2827 (D.D.C., March 18, 1992) (denying Defendant's Motion to Dismiss on this basis). The Defendant's Motion for Reconsideration does not present any new arguments or evidence. Rather, the Defendant reiterates its legal arguments.

Upon reconsideration of the Defendant's claims, the Court does not find any basis to alter its prior decision. As the Plaintiff pointed out, Congress amended the definition of "agency" in § 552(f) of the FOIA in order "to include those entities which may not be considered agencies under section 551(1) of Title 5, U.S.Code,[2] but which perform governmental functions and control information of interest to the public." H.R.Rep. No. 876, 93rd Cong., 2d Sess. 8–9 (1974), *reprinted in* 1974 U.S.Code Cong. & Admin.News at 6267, 6274. The Smith-

sonian is subject to the FOIA because it performs governmental functions as a center of scholarship and national museum responsible for the safekeeping and maintenance of national treasures. *See Expeditions Unlimited Aquatic Enterprises, Inc. v. Smithsonian Institution*, 566 F.2d 289, 296 (D.C.Cir.1977), *cert. denied*, 438 U.S. 915, 98 S.Ct. 3144, 57 L.Ed.2d 1160 (1978) (finding that the Smithsonian is an agency for purposes of the Federal Tort Claims Act).

Moreover, as the Court explained at the Hearing, the Smithsonian's structure reveals its status as an authority of the government properly subject to the FOIA. The parties do not dispute that the Smithsonian receives federal funds for many of its operations, that it is chartered by an Act of Congress, and that it has a majority of civil service employees. Furthermore, the Smithsonian receives the benefits of agency status by virtue of the fact that it receives representation from the United States Attorney, absolute governmental immunity in libel suits, and other benefits in property transfers. For all of these reasons, as well as those expressed at the conclusion of the March 18, 1992 Hearing, the Court finds that the Smithsonian is subject to the FOIA.

B. THE GOVERNMENT HAS NOT ESTABLISHED THAT THE RECORDS AT ISSUE WERE COMPILED FOR LAW ENFORCEMENT PURPOSES WITHIN THE MEANING OF FOIA EXEMPTION 7(C).

█ The Defendant seeks to withhold the two remaining documents[3] on the basis of FOIA Exemption 7(C). *See* Plaintiff's Motion for Summary Judgment at 3; Affidavit of James Douglas, attached to Defen-

---

1. *See* Plaintiff's Memorandum of Points and Authorities in Support of Her Motion for Summary Judgment, filed April 9, 1992, at 2–3.

2. This provision refers to the definition of the term "agency" in the Administrative Procedures Act.

3. The two documents at issue are Memoranda from the Acting Inspector General to the Di-

rector of the Museum Shops at the Smithsonian concerning the two individuals named in the Plaintiff's FOIA request. The Defendant's *Vaughn* index does not further identify the subject matter of the documents because it would allegedly "intrude and impact on the privacy interest of the subject of the documents." Douglas Aff. at 7, attached to Defendant's Motion for Summary Judgment.

dant's Motion for Summary Judgment. Exemption 7(C) permits the Defendant to withhold any records or information compiled for law enforcement purposes if the release of such materials "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). The Defendant "has the burden of showing that the records it seeks to shelter under Exemption 7 were compiled for adjudicative or enforcement purposes." *Stern v. FBI*, 737 F.2d 84, 88 (D.C.Cir.1984) (citing *Pratt v. Webster*, 673 F.2d 408, 421 (D.C.Cir.1982)). However, "an agency's general internal monitoring of its own employees to insure compliance with the agency's statutory mandate and regulations is not protected from public scrutiny under Exemption 7." *Stern v. FBI*, 737 F.2d at 89 (citing *Rural Housing Alliance v. U.S. Dept. of Agriculture*, 498 F.2d 73 (1974), *reh'g denied*, 502 F.2d 1179 (D.C.Cir.1974)).[4]

> [A]n agency's investigation of its own employees is for 'law enforcement purposes' only if it focuses 'directly on specifically alleged illegal acts, illegal acts of particular identified officials, acts which could, if proved, result in civil or criminal sanctions.

*Stern v. FBI, supra,* (citations omitted). *See also Greenpeace, U.S.A., Inc. v. Environmental Protection Agency,* 735 F.Supp. 13, 15 (D.D.C.1990) (records pertaining to whether an EPA employee violated EPA regulations concerning appearances at industry-sponsored functions do not qualify as records compiled for law enforcement purposes under Exemption 7).

The Defendant has not established that the two documents at issue were compiled for "law enforcement" purposes and therefore cannot claim the broad protections of Exemption 7(C). The Defendant merely asserts that, because the Inspector General

conducted an investigation, the documents responsive to Plaintiff's FOIA requests "plainly must have been compiled for law enforcement purposes." Defendant's Reply to Plaintiff's Opposition, filed May 6, 1992, at 3. The Defendant's assertion of a law enforcement purpose does not comport with the record in this case, however. Although both parties agree that the Inspector General has the ability to conduct investigations as part of the prosecution of a civil or criminal violation, both parties acknowledge that the Inspector General also investigates internal matters concerning agency inefficiency and mismanagement.[5] As in *Greenpeace v. EPA, supra,* the investigation to which these documents pertain could merely involve an alleged violation of the Smithsonian's own rules. Therefore, the fact that the Inspector General conducted an investigation, without more, does not allow the Court to infer that the investigation had a law enforcement purpose and the Court must deny the Defendant's Motion for Summary Judgment on the basis of Exemption 7(C).

## C. THE NAMED INDIVIDUALS HAVE AN EXEMPTION 6 PRIVACY INTEREST IN THESE MATERIALS WHICH OUTWEIGHS THE ASSERTED PUBLIC INTEREST IN THEIR RELEASE AND WHICH CANNOT ADEQUATELY BE PROTECTED BY REDACTION.

The Defendant also justifies its decision to withhold the remaining two documents on the basis of FOIA Exemption 6. *See* Plaintiff's Motion for Summary Judgment at 3; Affidavit of James Douglas, attached to Defendant's Motion for Summary Judgment; Defendant's Reply to Plaintiff's Opposition at 4, n. 1. Exemption 6 allows the government to withhold government records[6] if disclosure "would

---

**4.** However, the Court also noted that, in appropriate circumstances, the agency could withhold such materials under the aegis of Exemption 6. *See Stern v. FBI,* 737 F.2d at 89.

**5.** *See Plaintiff's Opposition to the Defendant's Motion to Dismiss,* filed March 2, 1992, at 13–14 (describing the Inspector General's broad authority); *Defendant's Reply to Plaintiff's Opposi-*

*tion to Defendant's Motion for Summary Judgment,* filed May 6, 1992, at 3 (relying upon Plaintiff's description of the Inspector General's duties).

**6.** The application of Exemption 6 does not depend upon the label on the particular file. Instead, Exemption 6 covers any "government records on an individual which can be identi-

constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). In determining whether the release of a government record would result in a "clearly unwarranted invasion of privacy," the Court must first determine whether any privacy interest is at stake and must then balance this privacy interest against any public interest in the release of the requested material. *See Dep't of the Air Force v. Rose,* 425 U.S. 352, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976); *Nat'l Ass'n of Retired Federal Employees v. Horner,* 879 F.2d 873, 874–75 (D.C.Cir.1989), *cert. denied,* 494 U.S. 1078, 110 S.Ct. 1805, 108 L.Ed.2d 936 (1990).[7]

 The individuals named as witnesses or as subjects of an investigation of the Smithsonian Museum Shops have a discernible privacy interest in the Inspector General's memoranda. *See Stern v. FBI,* 737 F.2d at 91. These individuals have an interest in avoiding the embarrassment and potential harassment that may result from public disclosure of their association with the Inspector General's inquiry. *See Dep't of the Air Force v. Rose, supra* (significant privacy interest for the subjects of investigations of honor code violations due to potential embarrassment and humiliation); *Dunkelberger v. Dep't of Justice,* 906 F.2d 779, 782 (D.C.Cir.1990); *Heller v. U.S. Marshals Service,* 655 F.Supp. 1088, 1091 (D.D.C.1987) (extremely strong interest in protecting employees who cooperate in internal investigation of possible criminal activity by fellow employees). Even if the

Inspector General's investigation focused upon seemingly innocuous internal agency matters, an employee has an interest in his or her employment history, including "a general interest in the nondisclosure of diverse bits and pieces of information, both positive and negative, that the government, acting as an employer, has obtained and kept in the employee's personnel file." *Stern v. FBI, supra.*[8]

The Court must balance these significant privacy interests against the public interest in disclosure. In evaluating the public interest, the Court must focus "on the nature of the requested document and its relationship to the basic purpose of the Freedom of Information Act to open agency action to the light of public scrutiny." *U.S. Dep't of Justice v. Reporters Comm., supra,* 489 U.S. at 772, 109 S.Ct. at 1481 (citations omitted). The Plaintiff contends, without elaboration, that the release of the Inspector General's memoranda would permit the public to evaluate the agency's discharge of its duties. *See* Plaintiff's Motion for Summary Judgment at 6. While the release of the Inspector General's reports would enable the public to evaluate the conduct of lower-level Smithsonian personnel, the Plaintiff never explains how the release of the Inspector General's memoranda pertaining to the Museum Shops would allow the public to evaluate the *Smithsonian's* discharge of its duties as a national museum and center for scholar-

fied as applying to that individual." *See U.S. Dep't of State v. The Washington Post,* 456 U.S. 595, 602, 102 S.Ct. 1957, 1961, 72 L.Ed.2d 358 (1982) (applying Exemption 6 to State Department records concerning whether an individual possesses a valid U.S. passport).

7. In determining the public interest in the requested material, the identity of the particular requester and the particular uses to which the requester will put the documents are irrelevant. *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press,* 489 U.S. 749, 770–75, 109 S.Ct. 1468, 1480–82, 103 L.Ed.2d 774 (1989).

8. Plaintiff's claim that the privacy interests of these individuals has been waived lacks merit. Although the better course would have been for the Government to refuse to confirm or to deny

the existence of responsive materials, *see, e.g., Dunkelberger v. Dep't of Justice, supra,* the filing of a *Vaughn* index does not foreclose the Government's decision to withhold the documents in order to protect the release of the *contents* of these reports. Moreover, the affidavit of Andrea Snyder, in which she disclosed that she was mentioned in an Inspector General's report, does not waive her privacy interests in the *content* of these reports. *See Reporters Comm., supra* at 766–69, 109 S.Ct. at 1478–79 (recognizing the privacy interest in information which may have, at one time, been publicly known). *Cf. Dow Jones & Co. v. Dep't of Justice,* 917 F.2d 571, 577 (D.C.Cir.1990) (a waiver exists only if the exact information given to the FBI became public and the fact that the informant was the source of the same information also became public).

ship.[9] Courts have routinely held that there is no great public interest in the alleged malfeasance or negligence of agency employees who do not occupy high-ranking positions of public trust. *See, e.g., Dunkelberger v. Dep't of Justice,* 906 F.2d at 782; *Stern v. FBI,* 737 F.2d at 92–93; *Schonberger v. Nat'l Transp. Safety Board,* 508 F.Supp. 941, 944–45 (D.D.C. 1981). While there is a public interest in discerning whether the Smithsonian effectively monitors its employees, this generalized public interest in good management does not override the privacy interests of those named in the Inspector General's reports. *See Carter v. U.S. Dep't of Commerce,* 830 F.2d 388, 390 n. 8 (D.C.Cir. 1987).

[redacted] The Plaintiff contends that releasing the two documents at issue with redaction of any identifying information would obviate any privacy concerns. *See* Plaintiff's Memorandum of Points and Authorities in Further Support of Her Motion for Summary Judgment, filed April 27, 1992, at 3. Plaintiff also claims that the Court should examine the documents *in camera* to determine whether any segregable portions exist. The Defendant, on the other hand, claims that redaction would not cure any invasion of privacy; given the Plaintiff's narrow request for documents pertaining only to two individuals and given the fact that the parties worked together at the Museum Shops, the Defendant fears that one could easily identify the individuals involved. *See* Defendant's Opposition to Plaintiff's Motion for Summary Judgment, filed April 27, 1992, at 3–4. Thus, the question before the Court is whether, after the redaction of the names of any individuals in the Inspector General's reports, any portion of these documents could be released consistent with the protection of the privacy interests identified above. *See* 5 U.S.C. § 552(b) ("[a]ny reasonably segregable portion of a record shall be provided ... after deletion of the portions which are exempt").

Releasing the documents responsive to the Plaintiff's request would necessarily abrogate the privacy interests of the two individuals named in the FOIA request. The threat to these individuals' privacy interests is "more palpable than [a] mere possibility" because, by the very fact of disclosure, the records "*can* be identified" as applying to one of the two named individuals. *Dep't of the Air Force v. Rose,* 425 U.S. at 381, 96 S.Ct. at 1608. In *Schonberger v. Nat'l Transp. Safety Bd.,* 508 F.Supp. 941, 945 (D.D.C.1981), the Plaintiff requested "access to information or a copy of action taken by ... the N.T.S.B. concerning Mr. B. Michael Levins, as a result of a grievance involving Mr. Daniel Hinton." The Court held that "there is no reasonable way to segregate the material in question to protect the person's privacy because the request sought one document, identified by name and date, applying solely to one individual." *Id.* This case poses the same dilemma. Even if all identifying information is redacted, the requester will associate these two individuals with the remaining material in the Inspector General's reports, thereby causing the same type of embarrassment and potential for retribution which Exemption 6

9. The fact that Plaintiff seeks only those Inspector General documents relating to two particular individuals undercuts the "public interest" implicated in this FOIA request. It is difficult to imagine how the public could discern a great deal about the Smithsonian's discharge of its duties through an evaluation of Inspector General reports pertaining only to two particular employees. In *Reporters Comm., supra,* the Supreme Court used a hypothetical example, built upon the case of *Dep't of the Air Force v. Rose, supra,* to explain how the public interest in the release of government records relates to the scope of the request. *See* 489 U.S. at 773, 109 S.Ct. at 1482 ("If, instead of seeking information about the Academy's own conduct, the requests had asked for specific files to obtain information about the persons to whom these files related, the public interest that supported the decision in *Rose* would have been inapplicable"). If the Plaintiff in this case followed the same course as the Plaintiff in *Rose,* and had requested *all* Inspector General reports relating to alleged misconduct at the Museum Shops, the Plaintiff could more plausibly argue that release of the documents would permit the public to oversee the Inspector General's discharge of his duties.

endeavors to avoid.[10] For these reasons, the Court shall grant the Defendant's Motion for Summary Judgment on the basis of Exemption 6.

### D. THE PLAINTIFF HAS NOT PRESENTED ANY BASIS WARRANTING AN IN CAMERA REVIEW OF THE DOCUMENTS WITHHELD ON THE BASIS OF FOIA EXEMPTION 5.

■ Despite the fact that Plaintiff did not challenge the Defendant's assertion of Exemption (b)(5), the Plaintiff has requested the Court to review *in camera* those materials being withheld on the basis of this Exemption. Presumably, the Plaintiff aims to insure that the Defendant has not misrepresented the nature of the documents being withheld. This type of bare suspicion does not permit the Court to order the Defendant to submit these materials for inspection. *See, e.g., Center for Auto Safety v. EPA*, 731 F.2d 16, 23 (D.C.Cir.1984); *Brinton v. Dep't of State*, 636 F.2d 600, 606 (D.C.Cir.1980), *cert. denied*, 452 U.S. 905, 101 S.Ct. 3030, 69 L.Ed.2d 405 (1981) ("Because the Department's affidavits made a sufficiently detailed showing of the application of the deliberative process ground of Exemption 5, and since there is no contradictory evidence or evidence of bad faith, the district court was entirely correct in granting summary judgment without conducting an in camera inspection of the documents").

*In camera* inspection is unwarranted in this case. The Defendant's *Vaughn* index was submitted under oath. There is no allegation of agency bad faith. Moreover, the description of the documents in the Douglas Affidavit sufficiently justifies the invocation of Exemption 5. In fact, the Plaintiff essentially concedes that the description of the documents justifies the in-

vocation of Exemption (b)(5). *See* Plaintiff's Memorandum of Points and Authorities in Further Support of Her Motion, filed April 27, 1992, at 4. Accordingly, the Plaintiff's request for an *in camera* inspection shall be denied.

### CONCLUSION

For the reasons stated herein, the Court finds that the FOIA does apply to the Smithsonian Institution. The Court also finds that the Defendant has properly withheld the two remaining documents in their entireties on the basis of FOIA Exemption (b)(6). Accordingly, the Defendant's Motion for Summary Judgment shall be granted and the Plaintiff's Motion for Summary Judgment shall be denied.

---

**10.** Given the limited focus of the Plaintiff's FOIA request in this case, the Court can easily distinguish *Arieff v. U.S. Dep't of the Navy*, 712 F.2d 1462 (D.C.Cir.1983). In *Arieff*, the Court determined that the control documents containing the names and amounts of prescription drugs supplied for the entire United States Congress would not, after redaction, reveal the identities of those for whom the prescriptions were

recommended. In this case, the narrowness of the request allows one to easily correlate the responsive documents to the two named individuals. It is doubtful that the Court would have permitted release of material in *Arieff* if the Plaintiff in that case requested only the control records pertaining to two particular members of Congress. *See* discussion in note 9, *supra*.